UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRIAN C. BURNETT, | ) |
| | ) No. CV-05-5040-CI |
| Plaintiff, | ) |
| | ) ORDER DENYING PLAINTIFF'S |
| v. | ) MOTION FOR SUMMARY JUDGMENT |
| | ) AND DIRECTING ENTRY OF |
| JO ANNE B. BARNHART, | ) JUDGMENT FOR DEFENDANT |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 14, 21), submitted for disposition without oral argument on January 11, 2006. Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney L. Jamala Edwards represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 4.) After reviewing the administrative record and the briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment and directs entry of judgment for Defendant.

Plaintiff, 45-years-old at the time of the administrative decision, protectively filed applications for Social Security

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT   - 1

disability and Supplemental Security Income (SSI) benefits on June 5, 2001, alleging disability as of November 7, 1994, due to spondylolysis / spondylolisthesis.[1]  (Tr. at 54, 407.)  At the hearing, the alleged onset date was revised by Plaintiff's counsel to November 1998, limited to a closed period of disability ending May 2002. (Tr. at 428.)  Plaintiff had a high-school education and past relevant work as a laborer in construction and farming.  After his back injury, Plaintiff attended college, but pain did not permit him to complete the program. (Tr. at 433-434.)  Eventually, his pain was controlled and Plaintiff was able to return to college, finished his training, and found work as a design drafting engineer. (Tr. at 437, 444.)  Following a denial of benefits at the initial stage and on reconsideration, a hearing was held before Administrative Law Judge Paul Gaughen (ALJ).  The ALJ denied benefits; review was denied by the Appeals Council.  This appeal followed.  Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

**ADMINISTRATIVE DECISION**

The ALJ concluded Plaintiff was insured for disability benefits through June 30, 2001, and had not engaged in substantial gainful activity.  Plaintiff suffered from severe spondylolisthesis, but

---

[1] Both conditions relate to the vertebra; spondylolisthesis refers to slippage forward of a vertebra.  Spondylolysis refers to a vertebra composed of relatively soft tissue instead of normal bone; such condition is described as "symtomatic."  Spondylolysis can lead to sponylolisthesis. American Medical Association, ENCYCLOPEDIA OF MEDICINE, 1989, at 935.  The medical record refers to both conditions.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT  - 2

the impairment was not found to meet the Listings. (Tr. at 21.) The ALJ rejected Plaintiff's testimony as not fully credible. The ALJ concluded Plaintiff retained the residual capacity to perform a full range of light work and was not able to perform past relevant work. Based on the Grids, Plaintiff was not found disabled. (Tr. at 25.)

## ISSUES

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff contends the ALJ improperly rejected the opinions of the treating physicians when he found certain impairments were non-severe. Plaintiff also contends the ALJ improperly rejected the claimant's testimony and his spouse's lay observations.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*,

201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

## STEP TWO

Plaintiff contends the ALJ improperly rejected the opinions of the treating physicians who concluded, based on years of treatment and objective tests, that Plaintiff suffers from severe chronic neck pain, bilateral carpal tunnel syndrome, migraine headaches, right shoulder tendinitis, and possible mental impairments, including chronic pain syndrome, memory loss or confusion,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT  - 4

depression, and fatigue or sluggishness. (Tr. at 270.) Plaintiff argues the ALJ improperly rejected the opinions without sufficient reasons. Defendant contends the ALJ properly rejected the additional impairments as non-severe based on lack of objective evidence, durational requirements, and opinions by physicians that Plaintiff was capable of performing work.

**1.    Chronic Neck Pain**

The ALJ noted in his opinion that Plaintiff sought treatment for neck pain in August 1997, that the neurological work up was essentially normal, and no course of treatment was prescribed. It was recommended that narcotic pain relief not be provided and that Plaintiff was capable of continued gainful employment at a light-to-medium level. It also was noted by the examiners that Plaintiff had been attending college and was within one month of completing a vocational retraining program in Applied Science and Engineering. (Tr. at 20.) The ALJ also commented Plaintiff complained of neck pain in July and August 1998, but there were references to drug seeking behavior. A radiological examination in October 2000 did not provide evidence of a cervical condition. (Tr. at 20.) In August 2001, the ALJ noted Plaintiff's treating clinician opined Plaintiff had spondylosis at L4-5 and no other disease of the spine. Finally, the ALJ noted interrogatories propounded to Dr. Almquist confirmed there was no objective evidence of a cervical condition. (Tr. at 21.)

At step two of the sequential process, the ALJ must conclude whether Plaintiff suffers from a "severe" impairment, one which has more than a slight effect on the claimant's ability to work. To satisfy step two's requirement of a severe impairment, the claimant

must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). However, an overly stringent application of the severity requirement violates the statute by denying benefits to claimants who do meet the statutory definition of disabled. *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994). Thus, the Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be found to be not severe *only* when evidence establishes a "slight abnormality" on an individual's ability to work. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (citing Social Security Ruling 85-28). The ALJ must consider the combined effect of all of the claimant's impairments on the ability to function, without regard to whether each alone was sufficiently severe. *See* 42 U.S.C. § 423(d)(2)(B) (Supp. III 1991). The step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims. *Bowen v. Yuckert*, 482 U.S. 137, 153-154.

    The ALJ's rationale is supported by the record. There is no objective evidence to support a severe cervical condition of one year duration. The records indicate Plaintiff sought relief from neck pain sporadically in April 1996, June 1998, again in July and

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT  - 6

December 1999; however, all objective tests were negative and there was a positive Waddell's test, indicative of psychogenic pain. (Tr. at 175, 277, 291, 342, 385, 399.) Based on the medical record, the ALJ did not err in concluding the chronic neck pain was non-severe.

**2.   Shoulder Pain**

In March 1999, Plaintiff was admitted to the emergency room for acute pain in the right shoulder after complaining of such pain a month earlier. (Tr. at 254, 256.) The pain was attributed to classroom work and moving his household. In December 1999, Plaintiff complained of right shoulder pain to treating physician Dr. Riojas; Dr. Riojas administered a steroid injection. (Tr. at 312, 315.) In February 2000, Dr. Riojas noted Plaintiff suffered from right shoulder tendinitis but was doing much better after eight weeks of physical therapy. (Tr. at 318.) Again, in October 2001, Plaintiff complained of right shoulder pain and requested a cortisone shot. Frostbite on the shoulder was noted. (Tr. at 380.) No shot was administered.

Additionally, there is no medical opinion Plaintiff would be limited due to a right shoulder impairment. The October 2000 MRI did not note changes. (Tr. at 389.) In June 2001, treating providers noted only spondylosis at L4-5, no other spinal disease, and that Plaintiff was capable of working. (Tr. at 277.) In August 2001, Dr. Eisler found Plaintiff's shoulder shrug was normal in strength and symmetrical. (Tr. at 289.) Finally, in October 2003, Dr. Almquist found no objective basis for a right shoulder impairment. (Tr. at 399.) There is no evidence to support functional limitations due to a shoulder condition. The ALJ did not err.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT   - 7

**3.  Mental Impairment**

There is no medical evidence of treatment or diagnosis of a mental impairment.  In 1998, there was reference to drug seeking behavior and an evaluation for chronic pain syndrome. (Tr. at 179, 220, 398.) In August 2001, Dr. Eisler found normal mental functioning.  (Tr. at 289.)  Although Dr. Almquist suggested administration of the MMPI, it was in the context of whether Plaintiff should undergo surgery to correct his back problem. (Tr. at 400.)  These were the only references to a mental condition. Moreover, it is undisputed Plaintiff returned to the classroom and to work following his ablation procedure in Seattle and without the benefit of any mental health treatment or counseling.  Thus, there is no objective basis on which to find a severe mental impairment.

**4.  Bilateral Carpal Tunnel, Migraine Headache, Fatigue**

Dr. Washington noted in January 1996 that "there was not a lot of pathology to explain the man's symptoms." (Tr. at 151.) In 1997, during an independent medical exam, there was mention of bilateral carpal tunnel syndrome, but it was described as "asymptomatic." (Tr. at 169.)  Other references in the record and noted by Plaintiff in his brief are limited to self-report.  Plaintiff was cleared for medium work with no manipulative limitations.  (Tr. at 155, 283.)

There are no medical records indicating treatment of one year duration for migraine headaches or fatigue.  In 1994, 1995, 1996, 1999, and 2000, Plaintiff complained of a history of headaches. (Tr. at 115, 123, 129, 149, 151, 184, 191, 270, 287.)   However, these references to the record are based solely on self-report. There were no objective findings or treatment notes that indicated migraine headaches; rather, it appears the headaches were associated

with simultaneous complaints of neck pain.

On July 24, 1996, Plaintiff sought treatment for a tension headache; he was to follow up but was a no show. (Tr. at 239.) On February 27, 1997, he sought treatment for neck stiffness and headache. No further complaints of headache were made. (Tr. at 240.) In October and December 1997, Plaintiff was treated for headache associated with neck pain. (Tr. at 248, 250.) In April 1998, Plaintiff had a Toradol injection at the emergency room following complaints of neck pain and headache. (Tr. at 251.) There were no further complaints until January 1999, when he woke up with a headache, nausea and vomiting. Again, there were no complaints until September 1999, when he had a headache associated with neck pain. (Tr. at 264.) In May and December 2000, Plaintiff complained of an occasional headache with increased neck pain. (Tr. at 273, 327.) In May 2000, Plaintiff also described headaches with associated nausea, vomiting and photophobia. (Tr. at 328.) He was treated with Inderal. (Tr. at 328, 331.) Other than the report in May 2000, Plaintiff's headaches were associated with exacerbation of neck pain; there has been no other treatment for migraine symptoms. The ALJ did not err when he failed to describe these impairments as severe.

### CREDIBILITY

Plaintiff contends the ALJ erred when he rejected his testimony and that of his spouse without clear and convincing reasons. Plaintiff testified he needed to lie down several hours during the day for back pain. (Tr. at 95, 97, 434, 442.) Plaintiff's spouse corroborated this testimony. (Tr. at 447, 449.)

In deciding whether to admit a claimant's subjective symptom

testimony, the ALJ must engage in a two-step analysis. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step, see *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986), the claimant must produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." *Id.* at 1281-82. If this test is satisfied, and if there is no evidence of malingering, then the ALJ, under the second step, may reject the claimant's testimony about severity of symptoms with "specific findings stating clear and convincing reasons for doing so." *Id.* at 1284. The ALJ may consider the following factors when weighing the claimant's credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his/her] testimony and [his/her] conduct, [claimant's] daily activities, [his/her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). If a reason given by the ALJ is not supported by the evidence, the ALJ's decision may be supported under a harmless error standard. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (applying the harmless error standard); *Booz v. Sec'y of Health and Human Serv.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (same).

In his opinion, the ALJ commented with respect to Plaintiff's testimony:

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT - 10

> In determining whether the claimant could perform light work, the undersigned has also considered his allegations of a degree of pain and limitation far in excess of the objective medical findings. The undersigned believes that clear and convincing evidence exists to reject the claimant's excess complaints. In coming to this determination, the undersigned has looked to Social Security Ruling 96-7p which dictates assessing the credibility of an individual's statements when the severity of the alleged functional limitation is not supported by the available objective evidence. Further, the law of the Ninth Circuit Court of Appeals, and Social Security Ruling 88-13, direct that "clear and convincing" reasons be present if a claimant's complaints are to be rejected. The undersigned believes that in this case, there are clear and convincing reasons to reject the claimant's excess complaints. First, the undersigned notes that the claimant's closed amended disability onset coincides with the period of time his vocational rehabilitation educational benefits were terminated. Second, testimony of the claimant and his wife at the hearing presented that the claimant was capable of only sitting up to one hour at a time, after which he would be required to lie down for up to three hours. However, the claimant underwent several treatments during this period of time, in Seattle, Washington. He was apparently able to endure the five hour, one way, automobile commute, and return, on those occasions without any record or discussion of its effect on him. Thirdly, there is no evidence of disuse muscle atrophy in spite of his level of alleged inactivity due to pain; there is no evidence of severe sleep deprivation because of his alleged pain; and there is no evidence of a severe weight loss because of a loss of appetite due to the alleged severity of pain. In fact, the record reflects that the claimant experienced a consistent weight gain of some 40 pounds during this time. Also, there is no evidence of attention, concentration, or cognitive deficits from pain. Consequently the claimant's allegations of disabling, excess pain and resulting limitations are not considered by the undersigned to be credible. Neither the overwhelming objective medical evidence to the otherwise nor the claimant's subjective complaints warrant his preclusion from at least light work. The undersigned also notes the claimant's drug seeking behavior as reflected in the medical record and this also negatively affects the claimant's credibility.

(Tr. at 23.) Plaintiff does not assert these findings are not supported by the record and this court's review of the record corroborates the ALJ's findings. Additionally, these reasons are clear and convincing support for rejecting Plaintiff's testimony as

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT  - 11

not credible.

Plaintiff also contends the ALJ neglected to make specific findings with respect to his spouse's testimony that Plaintiff was never on his feet for very long before having to lie down. (Tr. at 447, 449.) Defendant concedes this testimony was not addressed (Ct. Rec. 22 at 14), but argues that any error was harmless.

The ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). Moreover, pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to a lay witness's testimony before discounting it. Lay testimony can never establish disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). It is appropriate to discount lay testimony if it conflicts with medical evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Here, there was no objective medical evidence to support testimony Plaintiff needed to rest daily. Absence of corroborating competent medical evidence is a recognized basis to reject lay evidence. *Nguyen,* at 1467. Any error was harmless. *Batson v. Commissioner*, 359 F.3d 1190, 1194 (9th Cir. 2004).

## LIGHT WORK / GRIDS

Plaintiff contends the ALJ erred when he relied on the Grids and because he did not consider postural and manipulative limitations in concluding Plaintiff was capable of a full range of light exertion. As previously noted, there are no objective medical findings to support manipulative limitations or other limitations associated with alleged mental impairments.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT  - 12

Prior to the amended onset date, functional assessments in 1995 and 1996 included light or sedentary work, no repetitive bending or twisting, with alternative sitting, standing and walking. (Tr. at 133, 144, 161.) An RFC completed in August 2001, indicated light work, an ability to stand or walk for six out of eight hours, occasional postural limitations with no exposure to ladders and scaffolds or concentrated exposure to hazards (machinery, heights, etc.) (Tr. at 281-284). In 2001, Dr. Eisler did not recommend any limitations following an examination other than "appropriate mechanical use of the body." (Tr. at 287-291.) An RFC completed in December 2001 recommended light work with occasional postural limitations. (Tr. at 392-395.) These non-exertional limitations are contemplated within the description of nearly all light and sedentary work described in the Dictionary of Occupational Titles. See SSR 85-15.[2] Thus, there was no error. Accordingly,

---

[2]As noted in that ruling:

a. Limitations in climbing and balancing can have varying effects on the occupational base, depending on the degree of limitation and the type of job. Usual everyday activities, both at home and at work, include ascending or descending ramps or a few stairs and maintaining body equilibrium while doing so. These activities are required more in some jobs than in others, and they may be critical in some occupations. Where a person has some limitation in climbing and balancing and it is the only limitation, it would not ordinarily have a significant impact on the broad world of work. Certain occupations, however, may be ruled out; e.g., the light occupation of construction painter, which requires climbing ladders and scaffolding, and the very heavy occupation of fire-fighter, which sometimes requires the individual to climb poles and ropes. Where the effects of a person's actual limitations of climbing and balancing on the occupational base are difficult to determine, the services of a VS may be necessary.

b. Stooping, kneeling, crouching, and crawling are progressively more strenuous forms of bending parts of the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT  - 13

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 14)** is **DENIED.**

2. Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 21)** is **GRANTED**; Plaintiff's Complaint and claims are **DISMISSED WITH PREJUDICE.**

3. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. The file shall be **CLOSED** and judgment entered for Defendant.

DATED January 24, 2006.

                      S/ CYNTHIA IMBROGNO
               UNITED STATES MAGISTRATE JUDGE

---

> body, with crawling as a form of locomotion involving bending. Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact. . . . However, crawling on hands and knees and feet is a relatively rare activity even in arduous work, and limitations on the ability to crawl would be of little significance in the broad world of work. This is also true of kneeling (bending the legs at the knees to come to rest on one or both knees).